**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BEVERLY GRUNDY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **1:08-CV-899-TFM** |
| **MICHAEL J. ASTRUE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Following administrative denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*., and supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*., Beverly Grundy ("Grundy") received a hearing before an administrative law judge ("ALJ") who rendered an unfavorable decision. When the Appeals Council rejected review of this decision, it became the final decision of the Commissioner of Social Security ("Commissioner"). Judicial review proceeds pursuant to 42 U.S.C. §§ 405(g) , 1383(c)(3), and 28 U.S.C. § 636 (c), and for reasons herein explained, the court REMANDS this case to the Commissioner.

# I.     STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is limited.   The court cannot conduct a *de novo* review or substitute its own judgment for that of the Commissioner. *Walden v. Schweiker*, 672 F.2d 835 (11th Cir. 1982).  This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F. 3d 1211, 1213 (11th Cir. 1999), citing *Graham v. Apfel*, 129 F. 3d 1420, 1422 (11th Cir. 1997).

Substantial evidence is more than a scintilla —  i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

 The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.

*Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994).

## II.  ADMINISTRATIVE FINDINGS

Grundy, age 49 at the time of the hearing, completed the twelfth grade.[1]  Grundy's past relevant work includes kitchen helper, chicken de-boner, and cashier.[2]  She has not engaged in substantial gainful work activity since the alleged disability onset date of December 30, 2004.[3]  Grundy's disability application claims she is unable to work because of hypertension, anxiety and panic disorder, and depression.[4]

Grundy testified that she stopped working in October of 2004 when she developed chest and back pains.  A doctor attributed the pain to muscle spasms and tension, and prescribed muscle relaxants and pain medication.[5]  At the time of the hearing, Grundy was no longer prescribed pain medication, but antidepressants.[6]  She testified that her pain was continuous, estimated it at level eight on a scale of one to ten, and that she takes Tylenol PM, which provides slight relief.[7]  Grundy stated she is able to care for herself and wash dishes, but does not shop or cook.  She does not drive because of her pain, cannot walk a block, and can only stand or sit for ten to fifteen minutes.[8]  Grundy testified that she leaned when seated to alleviate pain.[9]  Grundy emphasized that she

---

[1] R. at 431-32.
[2] R. at 443-44.
[3] R. at 18.  Grundy's disability application states the onset date of disability is December 24, 2004 (R. 68). Grundy's hearing testimony placed the onset of disability in October, 2004 (R. 433.)
[4] R. at 73.
[5] R. at 433-35.
[6] R. at 435.
[7] R. at 436-37.
[8] R. at 438-39.
[9] R. at 439, 442-43.

doesn't like to leave her house for fear that she will have a panic attack and become unable to breathe, and her stress aggravates her hypertension.[10]

Grundy was examined by David C. Ghostley, Psy.D., on September 2, 2005.  Dr. Ghostley recommended psychiatric treatment based on his diagnosis of panic disorder with agoraphobia and major depressive disorder, mild.   He estimated Grundy's intellectual functioning to be in the low average range, but found her motivated and fully cooperative, with no discrepancies between her report and historical medical documents.[11]

In October, 2005, state agency consultant William Simpson, Ph.D., used Grundy's records to complete a Psychiatric Review Technique Form (PRTF) and Mental Residual Functional Capacity Assessment.  The PRTF found a medically determinable impairment in the categories of affective and anxiety-related disorder.[12]  Dr. Simpson rated Grundy's restriction of activities of daily living as mild, with moderate ratings in maintaining social functioning and maintaining concentration, persistence, or pace.[13]  The Mental Residual Functional Capacity Assessment found moderate limitations in Grundy's abilities to understand/remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.[14]  The assessment concluded with Dr. Simpson's opinions that Grundy can attend and concentrate for two-

---

[10] R. at 441-42.
[11] R. at 289-90.
[12] R. at 274, 276.
[13] R. at 281.
[14] R. at 285-86.

hour periods, and a recommendation that she work in a setting which doesn't require frequent contact with the general public.[15]

Grundy was evaluated by Doug McKeown, Ph.D., in August of 2006. Dr. McKeown noted Grundy's statement that she stopped working because of chest and back pain and lack of ongoing mental health-related treatment.[16] Grundy reported her primary daily activity is watching television, that she does cook, but doesn't clean or shop. Dr. McKeown found Grundy has some symptoms that are consistent with anxiety symptomatology that would likely improve with treatment.[17]

Dr. Donald Hinton, Ph.D. completed a PRTF from a review of Grundy's records on September 28, 2006. Like Dr. Simpson, Dr. Hinton found medically determinable impairments in the categories of affective disorder and anxiety disorder.[18] However, Dr. Hinton found only mild limitations in Grundy's functional limitations.[19] The PRTF concluded with a comment that Grundy is able to care for herself in addition to shopping, walking, and cooking. Dr. Hinton noted that Grundy does not drive because of anxiety.[20]

The record includes a Physical Residual Functional Capacity (RFC) Assessment completed by a state agency disability specialist on September 29, 2006. The RFC found normal results in Grundy's chest with no limitation of motion from back pain and no postural limitations. She was deemed capable of occasionally lifting 50 pounds, frequently lifting 25 pounds, standing/walking for 6 hours in an 8-hour day, and sitting

[15] R. at 287.
[16] R. at 226-27.
[17] R. at 228.
[18] R. at 215, 217.
[19] R. at 222.
[20] R. at 224.

for 6 hours in an 8-hour day.[21]   Hypertension was cited as a basis for limiting Grundy's exposure to extreme heat and cold.[22]   Finally, the clinical director of Spectra Care, Jamie Abshire, LPC, stated in a letter dated December 26, 2007, that Grundy was being treated for panic disorder with agoraphobia.[23]

Jody Skinner provided vocational expert (VE) testimony.   The ALJ posed a hypothetical claimant to Skinner.   The criteria for the hypothetical included a person with Grundy's educational level who is capable of a full range of light work with mild to moderate postural limitations; has no manipulative limitations; must avoid hazards, dangerous machinery, and heights; and has mild to moderate situational depression. Skinner responded that such a person could perform Grundy's past work as a cashier and chicken de-boner.   Additionally, Skinner testified that such a person could work as an information clerk, usher, ticket taker, or security guard.[24]

The ALJ found Gooden is severely impaired by hypertension, and her medically determinable mental impairments of anxiety/panic disorder and depression are non-severe because they do not cause more than minimal limitations in her ability to perform basic mental work activities.[25]   The ALJ found Grundy's hypertension does not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I.[26]   The ALJ gave no weight to the statement from Jamie C. Abshire concerning Grundy's treatment at Spectra Care, but gave great weight to the consultative evaluation

---

[21] R. at 205.
[22] R. at 208.
[23] R. at 147.
[24] R. at 444.
[25] R. at 18.
[26] R. at 20.

from Dr. McKeown.[27]   The ALJ discussed his consideration of the four broad functional areas – daily living; social functioning; concentration, persistence and pace; and episodes of decompensation.   The ALJ referenced Dr. McKeown's report in discussing Grundy's activities of daily living, but did not mention the conflicting conclusions of Drs. Hinton and Simpson in the areas of social functioning or concentration, persistence and pace. The decision found Grundy has no more than "mild" limitations in the first three functional areas.[28]

The ALJ specifically stated that he gave careful consideration to the entire record before finding Grundy capable of the full range of medium work with the ability to lift/carry up to 50 pounds occasionally or 25 pounds frequently.[29]   This discussion acknowledged the role a claimant's credibility plays in RFC assessments, as well as daily activities, treatment and medications.   The ALJ found Grundy's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that her statements concerning the intensity, persistence and limiting effects of the symptoms are not entirely credible.   The ALJ found no record evidence of an orthopedic impairment or treatment despite Grundy's complaints of multiple joint pain.   Grundy's use of non-prescription medication for pain relief was also noted, along with evidence that Grundy is noncompliant with the regimen prescribed for her hypertension.[30]

---

[27] R. at 18.
[28] R. at 19.
[29] R. at 20.
[30] R. at 21.

The ALJ found Grundy is able to perform her past work as a cashier and has not been under a disability from the alleged onset date through the date of decision.[31]   The finding that Grundy is able to perform past work led the ALJ to conclude she is not entitled to disability benefits under the Act.[32]

## III.  ISSUES

Grundy raises two issues for judicial review:

1.   Whether substantial evidence supports the ALJ's Step Two finding that she does not have a severe mental impairment; and

2.  Whether substantial evidence supports the ALJ's Step Four RFC finding that did not include any mental limitations.

## IV.  DISCUSSION

**1.  <u>The ALJ committed reversible error at Step Two.</u>**

Grundy argues the ALJ did not comply with SSA regulations and policy because he did not adequately discuss the state agency opinions on Grundy's mental health when making the required Step Two determination on whether she is severely impaired.[33]   The Commissioner responds that Grundy did not bear her burden of proving severe mental impairment, and that the ALJ properly resolved the conflict among the opinions.

Regulations at 20 C.F.R. § 404.1527(f) address an ALJ's consideration of nonexamining sources.   An ALJ is instructed to consider factors such as the psychologist's specialty and expertise in SSA rules, supporting evidence in the record,

---

[31] R. at 21-22.

[32] R. at 22.  The ALJ's disability analysis followed the  five-step sequential evaluation process set forth in 20 C.F.R. §404.1520  and summarized in *Phillips v. Barnhart*, 357 F. 3d 1232 (11th Cir. 2004).

[33] The Step Two determination is whether a claimant is severely impaired.  *See Phillips,* 357 F.3d at 1237.

and supporting explanations.    20 C.F.R. § 404.1527(f)(2)(ii).    Specifically, this
regulation states

> Unless the treating source's opinion is given controlling weight, the
> administrative law judge must explain in the decision the weight given to
> the opinions of a State agency medical or psychological consultant or other
> program physician or psychologist, as the ALJ must do for any opinions
> from treating sources, nontreating sources, and other nonexamining sources
> who do not work for us.

*Id*.   Identical regulatory language addressing the evaluation of nonexamining opinion
evidence in applications for SSI is found at 20 C.F.R. § 416.927(f)(2)(ii).

Under the Court's reading of these provisions, the ALJ's decision to give no
weight to the treating opinion from Specta Care should have triggered a discussion of the
State agency opinions.  The opinion from Dr. William Simpson is especially relevant to
Grundy, as it found she has moderate limitations in her abilities to maintain social
functioning and to maintain concentration, persistence and pace.[34]  These findings led Dr.
Simpson to write that Grundy "would benefit from work which doesn't require frequent
contact with the general public."[35]   The record shows that Dr. Donald Hinton's
conclusions differed from Dr. Simpson's in that his report had only mild limitations in
these areas.[36]   Although Dr. Hinton's findings are consistent with the ALJ's ultimate
findings as to Grundy's capacity for work, the ALJ did not indicate why one opinion was
deemed more reliable than the other.  Thus, he did not meet a regulatory obligation to
address record evidence and explain why the State agency opinions were adopted or
rejected, either in whole or in part.

---

[34] R. at 281.
[35] R. at 281.
[36] R. at 222.

The Commissioner argues the ALJ considered the entire record and properly resolved the conflicting evidence in the record.  His brief details the differences between Dr. Simpson's 2005 opinion that Grundy has moderate functional limitations in two areas of social functioning, and Dr. Hinton's later, 2006 opinion, which found only mild functional limitations.[37]  Although the ALJ explicitly stated that he considered the entire record, he did not discuss his resolution of the conflicting findings, or the weights he gave the opinions from Drs. Simpson and Hinton.  The ALJ found Grundy can return to her past work as a cashier, an occupation which requires frequent contact with the general public.[38]  This finding poses a clear conflict with Dr. Simpson's recommendation that Grundy avoid contact with the general public.  The Court assumes Dr. Simpson's findings were discounted by the ALJ, but the decision does not explain why, and the Court "may not supply a reasoned basis for [an] agency's action that the agency itself has not given."  *Dixon v. Astrue*, 312 Fed.Appx 226, 229 (11th Cir. 2009), quoting *Zahnd v. Sec'y, Dep't of Agric.*, 479 F.3d 767, 773 (11th Cir. 2007).  The treatment of Dr. Simpson's opinion has a direct bearing on the ALJ's ultimate conclusion that Grundy can work as a cashier and frequently interact with the general public.  The record does not show the ALJ's reasoning on this issue, and the Court cannot accept the Commissioner's explanation of the ALJ's logic.

The Commissioner's brief also submits strong argument for the proposition that the ALJ is not required to discuss every piece of evidence in the record.[39]  Though this

---

[37] Def. Br. at 7.
[38] R. at 21.
[39] Def. Br. at 8.

principle has a long history in this District and Circuit, a review of the cases cited leaves the Court with the belief that the omission of State agency opinions are not included in the types of evidence which were not discussed by ALJs, but nonetheless upheld in the appeal process.  In *Dyer v. Barnhart*, 395 F.3d 1206 (11th Cir.), the Eleventh Circuit upheld an ALJ's decision which omitted discussion of the plaintiff's pain prescription for Lortab because it was prescribed on a single occasion for pain unrelated to the application for disability.  *Dyer*, 395 F.3d at 1211.  Similarly, in *McCray v. Massanari*, 175 F.Supp. 1329 (M.D. Ala. 2001), this Court dismissed the plaintiff's argument that the ALJ did not discuss his complaints of chronic back pain when the record contained passing reference to "a potential disc problem" without additional documentation, and plaintiff "did not indicate at the hearing that his claims of disability were premised on back pain or that he had functional limitations therefrom."  *McCray*, 175 F.Supp. at 1336.

The most recent case cited by the Commissioner is also distinguishable from the ALJ's treatment of record evidence in Grundy's case.  In *Kemp v. Astrue*, 308 Fed.Appx. 423 (11th Cir. 2009), the Eleventh Circuit upheld an ALJ's failure to specifically state his decision to give great weight to disability ratings issued by the Veteran's Administration (VA).  Citing *Hutchinson v. Bowen*, 787 F.2d 1461 (11th Cir. 1986), *Kemp* reiterated an ALJ's power to make implicit findings.  However, *Kemp* also emphasized the fact that the ALJ "continuously" referred to the "VA's evaluations and disability rating throughout the evaluation process."  The full incorporation of the very evidence that was not specifically weighed by the ALJ therefore provided a firm basis to uphold the ALJ's implicit findings on appeal.

As stated in *Dyer*, this Court must "review the agency's decision for substantial evidence" and it "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer*, 395 F.3d at 1210, citing *Foote v. Chater*, 67 F.3d 1553, 1558 (11th Cir. 1995); *Phillips,* 357 F.3d at 1240 n.8.   The Court emphasizes that the record in this case may well contain substantial evidence for the ALJ's decision regarding Grundy's application for disability and SSI benefits.   However, because the Commissioner's regulations set forth an evaluation process which becomes critical when the treating opinion is rejected, remand is required due to the ALJ's failure to include a complete analysis as dictated by regulations.

## V.   CONCLUSION

Pursuant to the findings and conclusions detailed in this *Memorandum Opinion*, the court concludes that the case should be remanded for compliance with applicable regulations.   It is, therefore, **ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED.**   A separate judgment is entered herewith.

DONE this 2nd day of March, 2010.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE